UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MIGUEL A. CRESPO, III,

                               Plaintiff,

    v.                                               9:18-CV-827
                                                             (GLS/ATB)

DANIEL DIBBLE and DONALD SMITH,

                               Defendants.

---

MIGUEL A. CRESPO, III, Plaintiff, pro se
NICHOLAS L. ZAPP, Asst. Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States Senior District Judge. Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 28). Plaintiff has not responded to the motion; in fact plaintiff has been out of contact with the court since June 2019. For the reasons set forth below, this court will recommend granting defendants' motion and dismissing the amended complaint with prejudice.

**I.    Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

**II.    Facts**

The court will briefly review the facts as stated in the amended complaint, as well as those facts developed through discovery and those currently unopposed by plaintiff.  In January 2017, plaintiff was an inmate confined at the Franklin Correctional Facility ("C.F.").  In his amended complaint, plaintiff alleges that on January 27, 2017, he was

escorted off his unit by defendants Sergeant Donald Smith ("Sgt. Smith") and Correctional Officer ("C.O.") Daniel Dibble, after a physical altercation. (Dkt. No. 8; Amended Complaint ("Am. Compl.") at 4).

Defendants took plaintiff to the infirmary, where they escorted him into an examination room and seated him on a table. (*Id*. at 4-5). Plaintiff's hands remained secured behind his back. (*Id.*). At that time, Sgt. Smith asked plaintiff if he was new to the facility, which plaintiff confirmed. (*Id.* at 4). Sgt. Smith then asked plaintiff if he knew "what happens to anyone who gets into trouble after 8:00 p.m." (*Id.*). Plaintiff answered, "No." (*Id.*). In response, plaintiff alleges that Sgt. Smith "closed fist punched" plaintiff in the forehead. (*Id.*). A nurse, who was in the examination room during this exchange, "did nothing to stop the assault" and exited the room. (*Id.* at 4-5). Sgt. Smith, C.O. Dibble, and another unidentified C.O. surrounded plaintiff, and Sgt. Smith "explained that his assault was what happened to people who get into trouble after 8:00 p.m., because they have to do paperwork and that they hate to do paperwork." (*Id.* at 5). Plaintiff attempted to "reason with" Sgt. Smith, at which time C.O. Dibble "punched" plaintiff in the face. (*Id.*). The unidentified C.O. pulled plaintiff off the examination table, causing him to fall head-first to the floor. (*Id.*). Sgt. Smith, C.O. Dibble, and the unknown C.O. repeatedly kicked, stomped on, and punched plaintiff. (*Id.*).

Plaintiff alleges that the nurse eventually re-entered the examination room, stating

"you guys are going to kill this guy, this has gone too far." (*Id.*). Sgt. Smith directed C.O. Dibble and the unidentified C.O. to place plaintiff back on the examination table. (*Id.*). Sgt. Smith and the unidentified C.O. left the room, and the nurse treated plaintiff's injuries. (*Id.*). C.O. Dibble took pictures of plaintiff's injuries, then plaintiff was "placed in a hospital room where [he] stood [sic] for almost a month," before he was transferred to another facility. (*Id.*).

Plaintiff was deposed in this action on May 21, 2019. (Dkt. No. 28-7; Plaintiff's Deposition ("Pl. Dep.")). Plaintiff testified that on January 27, 2017, he was walking through the recreation room when he was cut in the face, from behind, by an unknown assailant. (*Id.* at 10-14). When plaintiff turned around, he observed an inmate he assumed was responsible, and immediately attacked the individual. (*Id.*). The fight lasted for several minutes until plaintiff went back to his cell, where he was restrained by an officer response team. (*Id*. at 20).

In light of his injuries, plaintiff was taken to the Franklin C.F. infirmary by Sgt. Smith, C.O. Dibble, and C.O. Cuthbert.[1] (*Id.* at 22-24). The officers escorted plaintiff into an examination room, and sat him on a table. (*Id.* at 25). A nurse was also present. (*Id.*). Inside the examination room, Sgt. Smith put on latex gloves, then asked plaintiff if he was new to the facility, and if anybody "told [him] what happens when you get in trouble after eight o'clock?" (*Id.* at 27). When plaintiff responded "No," Sgt. Smith

---

[1]Plaintiff first identified C.O. Cuthbert at his May 21, 2019 deposition. Plaintiff has not made any attempts to add C.O. Cuthbert as a defendant in this matter.

punched him in the forehead. (*Id.*). C.O. Dibble and C.O. Cuthbert held plaintiff down, and the nurse, who witnessed Sgt. Smith punch plaintiff, left the room. (*Id.* at 27-29).

When plaintiff tried to speak, C.O. Dibble punched him in the left cheek. (*Id.* at 29). C.O. Cuthbert then pulled plaintiff off of the examination table. (*Id.*). While on the floor, plaintiff was kicked, slapped and choked by the officers. (*Id.* at 30-35). The alleged assault continued for approximately three minutes, until the nurse came back into the room and told the officers to stop because they were "going to kill" plaintiff. (*Id.* at 35-36, 42). Sgt. Smith directed C.O. Cuthbert and C.O. Dibble to pick plaintiff up off the floor. (*Id.* at 42-43). They placed him back on the examination table, at which time the nurse requested different officers come in for the examination. (*Id.* at 43). She also asked that plaintiff's restraints be removed. (*Id.* at 44).

Sgt. Smith, C.O. Dibble, and C.O. Cuthbert left the room, however C.O. Cuthbert returned to take photographs of plaintiff's injuries. (*Id.* at 44-45). Plaintiff testified that he sustained shoulder, wrist, elbow, back, leg, and facial injuries as a result of the officers' assault. (*Id.* at 46-47). In light of plaintiff's "serious" condition, the nurse insisted that he be admitted to the infirmary. (*Id.*). Plaintiff was confined to the Franklin C.F. infirmary for approximately 30 days, after which he was transferred to Mohawk C.F. for involuntary protective custody. (*Id.* at 62, 64).

Plaintiff never filed a grievance at Franklin C.F. regarding the January 27, 2017 assault. (*Id.* at 69, 72). He did, however, repeatedly ask for paper and pen while he was

5

housed in the Franklin C.F. infirmary, and informed at least one officer that he wanted to file a grievance. (*Id.* at 65). He was not, however, provided access to any writing material upon request. (*Id.* at 64-69). Plaintiff eventually spoke to a sergeant, who directed him to discuss the issue with the officers on duty in the unit. (*Id.* at 66). Plaintiff testified that he asked for, and was denied, pen and paper every day he was confined in the Franklin C.F. infirmary. (*Id.* at 66-67).

On March 3, 2017, plaintiff was transferred to Mohawk C.F. (*Id.* at 74). At no time during his confinement at Mohawk C.F. did plaintiff file, or attempt to file, a grievance regarding the assault. (*Id.* at 77).

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected,

7

or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the

other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

### B. Application

Defendants argue that plaintiff failed to exhaust his administrative remedies because he never filed a grievance regarding the alleged assault, despite his prior knowledge and use of the grievance process. In support of their argument, defendants submit a declaration from Judy Tavernier, the Inmate Grievance Program Supervisor ("IGPS") at Franklin C.F. (Dkt. No. 28-3; Tavernier Declaration at ¶ 1). IGPS Tavernier states that plaintiff arrived at Franklin C.F. on December 5, 2016, at which time he would have received an offender orientation handbook, including among other things a brief overview of the inmate grievance program at the facility. (*Id.* at ¶ 6). IGPS Tavernier also states that plaintiff never filed a grievance while housed at Franklin C.F., from December 5, 2016 until March 3, 2017. (*Id.* at ¶ 16).

Defendants have also filed the declaration of Joseph Cieslak, the IGPS at

9

Mohawk Correctional Facility. (Dkt. No. 28-5; Cieslak Declaration at ¶ 1). According to IGPS Cieslak, plaintiff arrived at Mohawk C.F. on March 6, 2017, where he was housed until his transfer to Upstate Correctional Facility on August 25, 2017. (*Id.* at ¶ 5). IGPS Cieslak also submits documentation indicating that, upon arrival to Mohawk C.F., plaintiff completed an orientation program regarding the grievance policies and procedures set forth by DOCCS. (*Id.* at ¶ 6). Based on a review of his records, IGPS Cieslak states that plaintiff never filed a grievance while housed at Mohawk C.F. (*Id.* at ¶16).

In addition, defendants have filed the declaration of Rachael Seguin, the Assistant Director of the Inmate Grievance Program for DOCCS. (Dkt. No. 28-6; Sequin Declaration at ¶ 1). Assistant Director Seguin is the custodian of the records maintained by CORC. (*Id.* at ¶ 3). According to her records, plaintiff did not pursue a grievance appeal to CORC regarding the underlying assault, or any other complaint, at any time while in DOCCS custody. (*Id.* at ¶¶ 11-12).

It is undisputed that plaintiff did not file a grievance regarding the alleged assault on January 27, 2017. It is also clear that plaintiff was aware of the DOCCS's grievance procedure both before and after the alleged assault, as illustrated by his filing of a prior grievance and orientation experiences. (Pl. Dep. at 72-73 (plaintiff was "pretty familiar with how to file a grievance" and might have filed a prior grievance at Mid-State Correctional facility). Thus, the defendants have shown that plaintiff failed to exhaust

his administrative remedies with respect to the January 27, 2017 incident. The court must next determine whether administrative remedies were in fact available to plaintiff. *See Ross*, 136 S. Ct. at 1858 ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones"); *Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing *Ross*, 136 S. Ct. at 1862) ("[T]he lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him.").

As noted above, plaintiff has failed to submit an opposition to defendants' motion. "However, the Second Circuit has clearly established that a district court may not grant an unopposed summary judgment motion without carefully analyzing the moving papers to determine whether the moving party has satisfied its burden of demonstrating that there are no issues of material fact." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 411–12 (E.D.N.Y. July 20, 2018) (citing *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "Moreover, the court may not rely solely on the moving party's statement of undisputed facts." *Id.* (citing *Vt. Teddy Bear Co.*, 373 F.3d at 244). "The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Vasquez v. Cnty. of Rockland,* No. 13 Civ. 5632, 2020 WL

11

883514, at *5 (S.D.N.Y. Feb. 24, 2020) (quoting *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995)).

In support of their position that plaintiff had full access to writing utensils and paper upon request while housed at the Franklin C.F. infirmary, defendants have submit the declaration of Franklin C.F. Sgt. Joshua Raymonda. (Dkt. No. 28-4; Raymonda Declaration). Sgt. Raymonda does not appear to have had any direct interactions with plaintiff during the period in question, but generally states what is "typically" provided to an inmate at Franklin C.F. wishing to file a grievance, or requesting pen and paper. (*Id.*). Plaintiff, however, insisted throughout his deposition testimony that he was denied access to writing material at the Franklin C.F. infirmary, thus rendering the grievance procedure unavailable. (Pl. Dep. at 64-69).

Even assuming plaintiff's testimony is sufficient to raise a genuine issue of fact regarding the availability of administrative remedies at Franklin C.F., it does not explain or excuse plaintiff's failure to file a grievance once he was released and transferred to another facility. *See McGinnis v. Crissell*, No. 9:13-CV-1538 (LEK/DJS), 2019 WL 3228867, at *3 (N.D.N.Y. July 18, 2019) (plaintiff did not justify his failure to exhaust where he declined to file a grievance in the days after being released from the facility medical unit, when he could have requested an extension of the filing deadline); *see also Adams v. O'Hara,* No. 16-CV-527, 2019 WL 652409, at *2 (N.D.N.Y. Feb. 15, 2019) (GTS/ATB) ("[I]f an inmate could not file such a complaint within the required time

12

period after the alleged occurrence, he or she could apply to the facility's [IGP] Supervisor for an exception to the time limit based on mitigating circumstances."). Per DOCCS regulations, inmates typically have 21 days from the alleged incident to file a grievance. 7 N.Y.C.R.R. § 701.5(a). The regulations also provide that an IGPS may grant an exception to the 21-day time limit based upon mitigating circumstances, as long as the request is made within 45 days after the alleged incident. *See* 7 N.Y.C.R.R. § 701.6 (g)(1)(i)(a).

Plaintiff arrived at Mohawk C.F. on March 6, 2019, approximately 38 days after the alleged incident on January 27, 2017. Plaintiff does not allege that administrative remedies were unavailable to him at Mohawk C.F. Plaintiff admits that he did not file a grievance at Mohawk C.F. because he believed it was too late. (Pl. Dep. at 74). Nevertheless, when plaintiff arrived at Mohawk C.F. he was still within the 45-day window to request an exception to the time limit for filing a grievance, and any alleged unawareness of his ability to do so is insufficient to survive defendants' motion for summary judgment. *See, e.g., Porter v. Uhler*, No. 917CV0047 (MAD/TWD), 2019 WL 2479000, at *14 (N.D.N.Y. Feb. 19, 2019), report and recommendation adopted, 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019) (rejecting plaintiff's argument that the grievance procedure was unavailable because plaintiff was unaware of it, and had neither been directed to utilize the procedure nor given a copy of the Inmate Handbook); *Galberth v. Washington*, No. 14-CV-0691, 2017 WL 3278921 (S.D.N.Y. Jul, 31, 2017)

("A plaintiff post-*Ross* must show more than mere unawareness of an existing grievance procedure; a plaintiff must show that he was unaware because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.'").

In light of the foregoing, the court recommends granting defendants' motion for summary judgment, as that there is no genuine issue of material fact that plaintiff failed to exhaust his administrative remedies with respect to the January 27, 2017 incident. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit. *See Snider v. Melindez,* 199 F. 3d 108, 111-12 (2d Cir. 1999). However, dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, (W.D.N.Y. Mar. 30, 2018) (citing inter alia *Rodriguez v. Westchester Cty. Jail Corr. Dep't*, 372 F.3d 485, 487 (2d Cir. 2004) ("[A] prisoner's complaint should be dismissed with prejudice where administrative remedies were available for a reasonable length of time and were not exhausted in the absence of any justification.") (internal quotations omitted)); *Hilbert v. Fischer*, No. 12 Civ. 3843, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 4, 2013) ("because the time to both file a grievance and request an exception to the time limit has long expired, and because

Plaintiff has not offered any reason for his delay in filing a grievance with respect to his . . . claim, the claim is dismissed with prejudice").

Here, the time for plaintiff to exhaust the alleged January 27, 2017 assault has long since expired, therefore the court recommends dismissing plaintiff's complaint with prejudice. *See Thomas v. Kinderman,* No. 9:17-CV-00425 (DNH/TWD), 2017 WL 8293605, at *6 (N.D.N.Y. Dec. 4, 2017) ("If a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust them has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.").

## IV. Failure to Prosecute

### A. Legal Standard

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action, or comply with any order of the court. *David King v. Anthony J. Annucci,* No. 9:16-CV-1298 (BKS/DEP), 2017 WL 3888057, at *3 (N.D.N.Y. Aug. 3, 2017), report and recommendation adopted, 2017 WL 38887910 (N.D.N.Y. Sept. 5, 2017) (citing *Baptiste v. Sommers,* 768 F.3d 212, 216 (2d Cir. 2014)). "Moreover, notwithstanding the leniency with which *pro se* plaintiffs are treated, a plaintiff has the duty to inform the court of any address changes." *Sripirom v. Rivers Casino and Resort,* No. 1:19-CV-317 (MAD/ATB), 2019 WL 7944408, at *1 (N.D.N.Y. Aug. 29, 2019), report and

recommendation adopted, 2019 WL 6711387 (N.D.N.Y. Dec. 10, 2019) (citing *Lucas v. Miles*, 84 F.3d 532, 538 (2d Cir. 1996)(pro se plaintiffs are entitled to a degree of leniency, but that should not extend to a disregard of the court's plain directives) (dissenting opinion)).

"The demand that plaintiffs provide contact information ***is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit***." *Dumpson v. Goord*, 00-CV-6039, 2004 WL 1638183, at *3 (W.D.N.Y. July 22, 2004) (emphasis added). Additionally, Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York states that failure to notify the court of a change of address in accordance with LOCAL RULE 10.1(b) may result in the dismissal of any pending action.

The Second Circuit has held that, generally, a determination of whether to dismiss for failure to prosecute involves a consideration of whether (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions. *Raber v. Merck, Sharp & Dohme Corp.,* 526 Fed. App'x 17, 18 (2d Cir. 2013) (citing *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). No one factor is dispositive. *Id.*

Dismissal is a harsh remedy to be utilized only in "extreme situations." *Rivera v. Fisher*, No. 09-CV-552A, 2013 WL 3989457, at *3 (W.D.N.Y. Aug. 2, 2013) (citing inter alia *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)).

### B. Application

Alternatively, defendants argue that dismissal of this action is warranted as a result of plaintiff's failure to notify the court and defense counsel of his current mailing address.

On July 30, 2018, I issued a decision and order reviewing plaintiff's complaint and IFP application pursuant to 28 U.S.C. §§ 1915(e), 1915A. (Dkt. No. 4). The order, among other things, informed plaintiff of his obligation to notify the court and defendants of any change in his address, and warned him that "his failure to do so will result in dismissal of this action." (*Id.* at 8). Plaintiff's obligation to apprise the court of any change in his address or face possible dismissal of his action, was reiterated in my October 24, 2018 decision and order accepting plaintiff's amended complaint as the operative pleading in this action. (Dkt. No. 10 at 4).

On June 5, 2019, the court received written notice from plaintiff providing an updated address, as he had been released from custody. (Dkt. No. 24). On August 26, 2019, defendants requested an extension of the deadline to file a dispositive motion in this matter, which request I granted in a text order the same day. (Dkt. Nos. 25, 26). However, the copy of the order that was mailed to plaintiff using his last known address

was returned to the court as undeliverable, with a notation that read "Return to Sender – Not Deliverable as Addressed - Unable to Forward."  (Dkt. No. 27).

On September 27, 2019, defendants filed the instant motion for summary judgment, at which time the court issued a notice to plaintiff of the applicable response deadline.  (Dkt. Nos. 28, 29).  Again, the notice was returned to the court as undeliverable, with the same notation previously described.  (Dkt. No. 30).  As noted, plaintiff has not responded to the pending motion.

Upon consideration of the relevant factors, dismissal of plaintiff's complaint is alternatively warranted due to the plaintiff's failure to provide his current address, resulting in the court and opposing counsel's continued inability to communicate with him.  As previously noted, plaintiff was twice placed on notice that his failure to provide an adequate address may result in dismissal of his case.  Despite the same, it is approaching ten months since the court has last received any communication from plaintiff, and all attempts to reach him have proven futile.  If this matter were to survive summary judgement, defendants would be prejudiced by the plaintiff's anticipated failure to appear for an exhaustion hearing, or trial.  "Given the plaintiff's manifest disinterest in pursuing his claims in this action[,] . . . the need to alleviate congestion on the court's docket and the defendants' interest in defending against the claims asserted by plaintiff outweigh his right to receive a further opportunity to be heard on this matter."  *Dozier v. Doe*, No. 9:17-CV-584 (MAD/DEP), 2019 WL 2997241, at *3

(N.D.N.Y. Feb. 27, 2019), report and recommendation adopted, 2019 WL 2314560 (N.D.N.Y. May 31, 2019). Furthermore, less-drastic sanctions would be ineffective, as such orders would likely never reach plaintiff. *See id.*

Based on the aforementioned, dismissal of plaintiff's amended complaint is further recommended due to plaintiff's failure to notify the court of his current address, as this matter cannot reasonably proceed without plaintiff's participation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 28) be **GRANTED**, and the plaintiff's amended complaint be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 24, 2020

*[signature: Andrew T. Baxter]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge